So, we will hear argument next in CRIMAR systems against ALE, USAID, and then we will hear 182420. Peschel? Yes, Your Honor. May it please the court, Elisabeth Albert Peschel on behalf of defendant appellant ALE, USAID, Inc. As this court just heard in the appeal before us, all asserted claims in the ALE case have been invalidated by the Board in final written decisions. In the ALE case, CRIMAR continues to pursue ongoing royalties on asserted claims that have been found invalid. That leaves a controversy between the parties as to the equity of that award. The district court below abused its discretion in refusing to substantively consider ALE's request under both Rule 60 and its request to stay the case pending this court's review of those final written decisions. And do I remember right that the request to stay the case kind of in the alternative was everybody seems to agree it was presented, but that was in a footnote in that opening filing which was mostly about suspending the ongoing royalties? Right. So, Your Honor, at Appendix 336, there was a request to either set the ongoing royalty rate to zero or stay the case. And then as a follow-up to that, at Appendix 338, ALE requested that if the, in the footnote 9, I believe, that to the extent that CRIMAR was going to argue that the prior ongoing royalty rate applied, that the court would reconsider its decision and that ALE was moving under Rule 60 to set aside that prior judgment. With respect to ALE... And I'm sorry, and so your position on the stay is that the district court declined to he didn't have the power to do it. And what he should have done is to recognize the power and exercise the usual consideration of relevant equitable factors. Yes, Your Honor, with respect to the issue of the ongoing royalties and the request for the stay. But the district court also erred in its consideration of the remanded 012 patent issue as well. With respect to the Rule 60 motion, I want to be very clear with the record. But if the district court was correct that the issue was moved, the 012 was moved. Well, Your Honor, even if we set aside the 012 issue, the district court needed to consider the equity of rewarding those ongoing royalties, the change in circumstance of the final written decisions, because it invoked its equitable authority to issue those post-verdict ongoing royalties. And it didn't even substantively consider the change in circumstances. So irrespective of whether the district court was right on the 012 issue, the district court needed to analyze the final written decisions. Those final written decisions came after the... Let me be clear, the last final written decision, which was the final written decision on the 760 patent, was the only decision to, after the other final written decisions had come out, render all of the accused products out of the case. Because the 760 patent is a system patent. And so there would have been no change to liability until each of the prior patents and then the 760 final written decision came out. That decision came out on April 26th of 2018, after Ailey had already argued in the first appeal. When this court issued its May 8th opinion in the Crime R1 appeal, the court noted that it was going to remand the case. And so its very first opportunity in the status conference before the district court, Ailey stood up and said, Your Honor, there has been a change in circumstances. Final written decisions have invalidated all asserted claims in this case, and that needs to be addressed in this proceeding below in the district court. At that point, putting aside the 012, there were still about 10 months of life left on the other three patents. Yes, Your Honor. Can I ask you, I know this is not something that both parties have fully briefed, but the relationship between this case and the one that we just heard. Taking as a premise, just for purposes of this question, that those final written decisions are affirmed, what do we do in this case? If those final written decisions are affirmed, it has an immediate preclusive effect on Ailey's case. That will render the judgment, this court needs to vacate the judgment in the Ailey case. An order of dismissal of the case. Right, and well, Your Honor, we would ask for a remand to the district court for a reassessment of costs. Because there's been a prevailing party at that point. That wipes out the damages. Yes, Your Honor. Have the damages been paid? No. What was happening to the ongoing royalties during the period that that, that they were in effect? Or I guess it's, yeah, before the patents expired. As part of the original judgment in the original case, at docket 445 in the district court docket, the parties entered into a stipulation that there would be no execution on the judgment until 30 days after the all appeals have been finalized. So there's. Including as to the ongoing royalties? Yes, Your Honor. So those have not been moved out of your pocket into even an escrow pocket? Correct, Your Honor. Your second ground for challenging what the district court did had to do with the counterclaim that ALE was not an infringer. Yes, Your Honor. So with respect to the 012 patent, which was remanded after by this court after a change in construction. The district court determined that upon Cramer's motion to dismiss that the 012 patent issue had been completely abrogated. Now what ALE argued was that no, in fact, ALE still had a pending counterclaim with respect to the 012 patent and that Cramer's covenant not to sue, the original covenant not to sue before the district court, did not extend to ALE's distributors and customers. And that left open an open question. And it left open an open question because we knew from the record that was presented to the district court that certain distributors and customers to whom ALE had an obligation to identify were on lists excluded from their licenses. Can I just ask you two questions about that? One is your counterclaim specifically is about whether, I think in the counterclaim it's called enterprise, enterprise infringed. What does the possible infringement of customers or distributors have to do with that? And then I'll have a second question in a minute. Yeah, so the counterclaim at issue, so if you focus on, that is a little bit focused on the second half of that counterclaim. The beginning is talking about what ALE's rights and obligations are. And ALE had an obligation to identify some distributors and customers that would have been impacted by Cramer's continued assertion of the 012 patent against power over ethanol industry members. What do you want me to look at when you talk about the first half and the second half? I guess I'm looking at A996, which is the first count of the counterclaim, the one for a declaratory judgment of non-infringement of the 012 patent. Only about eight lines, well, 10 lines total. That's the counterclaim that we're talking about, right? Yes. Yes. Well, the incorporation of 67 paragraphs, is that what you're referring to? No, no, Your Honor. Paragraph 60 on APPX 997, the second sentence, a quarterly enterprise requested judicial determination of its rights, duties, and obligations with regard to the 012 patent. Just, but, I mean, how is that reasonably read as having anything other to do with paragraph 69 and the first sentence of 70? It was all about whether enterprise has infringed or doesn't infringe. Well, and again, and I think you pointed to the very first part of paragraph 69, where it says, by virtue of Cramer suing enterprise in this action, as described above, and as described above includes a description of its suing. Right. There exists an actual and justiciable controversy regarding the non-infringement of 012 patent by enterprise. It doesn't say by enterprise's customers and distributors. Well, if you look at paragraph 66 on APPX 996, you know, Cramer's conduct demonstrates it will seek to prevent enterprise from manufacturing, importing, offering for sale, or selling products with POE functionality. That included, that includes Cramer's actions and course of conduct against other manufacturers of products with POE functionality. But can, so my, let me ask you my, the second question about this counterclaim. If enterprise has been given a covenant not to be sued, why doesn't exhaustion doctrine fully protect its customers and distributors? Well, there was a dispute in the district court below as to whether ALE supplier, a licensed ALE supplier. No, no, not suppliers. And you haven't relied in your brief on suppliers. Right. No, we have not relied on suppliers. Only customers and distributors. So the product is still moving toward them. Right. Because, because of the system claims and combining these things into systems, there was an argument in the district court that exhaustion would not apply to other members of the supply chain. And so that's, that left a substantial issue in ALE's mind about whether or not exhaustion would apply to its customers and distributors. Okay. You are into your rebuttal time since you've reserved a full five minutes, but you can decide how to use it. I'll reserve the remaining time. Okay. Can you start, I realize this is getting ahead of where we are with the question I asked Ms. Peschel about what happens to this case if the one that we just heard argument in is affirmed? Yes, Your Honor. We believe under this court's precedent, the judgment that this court has already affirmed with respect to damages and infringement for three patents that have already expired was final and remains final. So the later determination by the PTO that is subsequently affirmed by this court would not and should not disturb the final judgment below. How does Fresenius impact that argument? I mean, doesn't, this seems to me like exactly like the case is still live. That's the judgment. This is, we've had other cases where the judgment was executed between the up and down and somebody paid some money and we wouldn't let them claw it back, but nothing's been paid over here. Well, that's correct, Your Honor. But finality doesn't determine, isn't determined by whether or not the infringer has paid. This court's precedent says, is there a justifiable controversy between the parties? Is there anything left for the district court to resolve in terms of a dispute? And once CRIMAR here provided ALE with a covenant not to sue and moved to dismiss the 012 patent, as the district court found, there was nothing left of this case other than to enter the final judgment. And what's most... But it hasn't been entered yet. The amended final judgment has been entered. But it's not effective. Well, that's assuming the judge had no obligation to consider the ongoing royalty issue. Well, Your Honor, on that, we believe the court's, the district court's attempt to reconsider the ongoing royalty would have violated this court's mandate rule. The damages and the ongoing royalty were encompassed in this court's mandate in CRIMAR. We have a case law that says the mandate rule doesn't stand in the way of prospective relief. Well, and Your Honor, I think that is really the right question because had ALE asked for prospective relief below and a Rule 60b-5 motion, meaning, Dear Judge, the equities have changed now that the PTO has issued final decisions. We want relief from ongoing royalties from July 2018 forward. That would have been a different issue that would have been properly asking for prospective relief. What ALE asks this court... Well, starting with what ALE asked the court... Well, principally, it asked for a suspension of the payment of the ongoing royalties and a stay of the whole case in the alternative. It asked for a stay of the whole case or to sever all ongoing royalties, meaning post-verdict ongoing royalties. It's asked for retrospective relief throughout. Dr. Peschel has asked for retrospective relief in this court to vacate the entirety of the jury's verdict on damages and the entirety of the ongoing royalties post-verdict forward. So I believe under this court's precedent... You still haven't explained to me why this is distinguishable from Fresenius. It seems like the same thing happened here, that we affirmed in part, including the part that affected the judgment, and we remanded it on a separate part. There was no further action on the judgment part, but when it came back up on appeal, because the case was still alive, looking at the case as a whole, not just specific parts that we vacated the judgment. Well, this court in Fresenius... This case is distinguishable from Fresenius for two reasons. First, in Fresenius, the infringement action was live. The case was remanded for determination of damages below. In the meantime, this court affirmed the PTO's judgment of invalidity, meaning there was a final decision from this court on invalidity before the district court had a chance to re-evaluate damages. Sure, but what difference does that make? I mean, if we affirmed before or after the district court made its decision. I mean, they still have a right to appeal. Well, that's a good question, meaning that ALE has a right to appeal, and there would be seemingly nothing stopping ALE from appealing indefinitely and repeatedly. There probably ought to be some kind of threshold precondition of non-frivolousness. I have a hard time putting aside the question whether the district court was wrong, and if there were no IPRs, what we would do in ruling on the merits of their counterclaim argument, or maybe even an and their argument about whether a final written decision, though it certainly doesn't require, it's not given immediate effect, preclusive effect, but as a matter of equitable discretion to either suspend the ongoing royalties or to stay the case, certainly the contention that is non-frivolous that the district court should have considered that on its merits rather than saying I have no power to do it. The district court, in the record below, considered exactly what ALE requested, which is to stay the case or sever the ongoing royalties, depending on the determination later for the 012 patent issue. The district court found that once CRIMAR moved to dismiss the 012 patent, provided a sufficient covenant not to sue, there was nothing left for the court to resolve per the mandate. The only mandate from this court was to resolve infringement of the 012 patent. But then it's, okay, there's an additional non-frivolous contention, which is whether the mandate actually, which did not address the IPRs, which did not have effect yet, and yet there were ongoing royalties. It's certainly a non-frivolous contention that the mandate, that the district court was wrong about the mandate too. I don't believe ALE has ever made an argument that the district court erred in reviewing its mandate. But the key issue was that the district court has equitable powers and discretion. And in every case that this court has reviewed, in every case that ALE has cited, there has never been an abuse of discretion reviewing a Rule 60b-5 motion. Can I get back a little bit to what Judge Hughes was talking about for Zinneas? One of the key cases for Zinneas relies on is a Supreme Court case called Simmons. In Simmons, which I think this has not been true of our subsequent cases, but in Simmons, the Supreme Court said that even when the only issues left in the case that kept it alive were not patent issues at all, but an unfair competition question, the case was still live enough that when the Supreme Court later revivified the patent at issue, the previous otherwise final invalidation of that very patent in the case had to be reconsidered. Why is this not the mirror image of that? So that as long as there was something still non-frivolously live in the dispute between the parties so that ALE wasn't just keeping the case alive on frivolous grounds, but was keeping the case alive, but on non-frivolous grounds, why doesn't Simmons require that again? All still by the assumption we're talking about of invalidation of the claims at issue here and the IPRs being affirmed. Why doesn't that mean that has to be given effect? Because that wouldn't be a final judgment under Rule 60b-5. For Rule 60b-5 relief, there must be a final judgment. ALE has argued that the judgment was non-final and therefore could be stayed. Subsequently, after the district court entered the amended final judgment, they renewed their motion for procedural reasons. But the real reason is that was the final judgment and there's nothing left for the district court to resolve. Matter of fact, sitting here today, there's no case or controversy between the parties because with respect to the 012 patent, which was the basis for jurisdiction and to establish a case or controversy, ALE has received the exact covenant not to sue that it wanted. It included its distributors and customers. Therefore, the relief that ALE was seeking... Are you telling us something that we haven't been told until just this moment? No, that was in CRIMAR's second motion to dismiss, that what had changed... That the covenant not to sue was expanded? Correct, Your Honor. I see. In addition, the asserted claims of the 012 were dedicated to the public and disclaimed. So there is no jurisdictional basis on the 012 patent anymore, even if there was an argument at the outset regarding the distributors and suppliers issue, which we disagreed. That leaves the question whether there was a non-frivolously live dispute about various forms of stay, whether it's the ongoing royalties or the entire case. And the district court rightly found there was nothing left of the case. There was nothing left for the district court to do other than to enter the final judgment, which it did, which is why there was no basis for a stay. Each factor to consider in looking at a stay weighed against a stay. CRIMAR would be prejudiced. The case was completed. There was nothing left to resolve. Where is that reasoning in the district court's opinion? That... Your Honor, that's Appendix 31. Starting at 33 and 34, district court found there were no more counterclaims. Well, this is before the covenant not to see what's expanded. Well, that's correct, Your Honor. And before the dedication to the public, those two acts took place later. That's correct, Your Honor. But on Appendix 35 and 36, the district court analyzed the exact relief that Ailey requested to stay the case, to stay the ongoing royalties. The district court found, number one, there's no basis for a stay, and number two, it'd be beyond the mandate. And this court has, likewise, found in cases like Versada, Retractable Technologies, Tronzo, that to review... I'm having a hard time seeing, and there's one paragraph here, right, from 35 to 36, seeing an exercise of discretion as opposed to I am disempowered to even consider the question. Well, I believe on Appendix 35, the first sentence, that once having dismissed the 012 patent from this action with prejudice, there's nothing left for the court to resolve. Ailey has filed a motion to stay and or sever the ongoing royalties pending appeal. But given that the sole basis for this court's jurisdiction on remand has been resolved by a voluntary dismissal, there's nothing left to stay. Doesn't a court always have jurisdiction to reconsider equitable relief that's prospective? I think that is true, and had Ailey requested that, that would be a different issue here on appeal because... I thought they were making a request of generally equity as well as with regard to Rule 60. Yeah. I think the major issue and the problem with Ailey's position is they want to assign error to the district court for not considering something that Ailey did not request, namely, relief from the judgment under Rule 60 because the equities have changed. Why do they have to ask under 60? What can't they just say as a matter of the court's equitable powers? Well, I think they can, but the proper vehicle would be Rule 60b-5 in this case. Why is that necessary? I think this court has said that other issues are encompassed in the mandate. The mandate would prevent... But they only do equity under Rule 60? I believe that's correct, Your Honor. To our final judgment, to essentially modify or relieve a party from liability under the final judgment, Ailey would have had to have moved under Rule 60b-5 properly, filed that motion. Aren't they asking for that relief before there is a final judgment? They were, and then they renewed that motion later. So procedurally... So why isn't their request for equitable relief before the final judgment is entered sufficient to preserve the issue of equity? I think it would be, possibly, had they asked for that relief. And the key here, Your Honor, is that the relief they requested was a stay. Well, I mean, everybody knew what was going on. The patents had been invalidated. There was an ongoing royalty. The Stripes one, it's strange that anyone would be required to pay a royalty on an invalid patent going forward. And there was a prayer for, give us some relief. They cite Rule 60b-6. They also say, of course, you've got equitable powers. Chancellor's sitting on the wool sack. Relieve us and stay this case so we find out whether or not these claims really are invalid. And if they're finally invalid, why should... No one would argue that we should have to pay an ongoing royalty. Well, and Your Honor, I think there's a... That argument, as I understood it, was presented to the judge. And the judge said, I don't... Too late. I've now dismissed the part of the case that was sent back. I have no power to address anything else. Well, no power and, you know, also, the court has the discretion of whether or not to exercise its equitable powers. Right, but it's not clear that the judge exercised the discretion because it's not clear that the judge recognized that he had it. Well, it's also because the relief requested was not under Rule 60b-5 for modification. If he did exercise the discretion, what would stop us from saying he made a mistake? Well, the world knew what was on the table. Everybody knows about Simmons. Everybody knows about Fresenius. It's not like we're naive here. Right? I think... And the notion you would think probably a person who's paying royalties in the future on a patent that's invalidated could come into the court years later and say, please stop it. They could. And I think once under Fresenius, this court has affirmed the PTO's decision of invalidity, a later motion for Rule 60b-5 relief, prospective royalties, would make sense. And you'd be more under the Fresenius framework. Looking at this case from the district court's perspective, what is the district court supposed to do when this court has said it is under the mandate, unable to modify the judgment? Well, if the district court has read Simmons, the district court says, I'll just stay this and wait and see what happens. Because if the federal circuit invalidates these claims and serves as denied, case is over and he enters an order dismissing the case. But at the same time, Your Honor, in this... I mean, that's what... I mean, that was in the air. It could not possibly have not been in the air that those consequences would be. It was in the air, but this court in Crime R1 affirmed the totality of the damages while noting in footnote two of the Crime R1 decision that these patents have been held invalid by a final decision from the PTO. So between this court's May 2018 decision and the district court's looking at it in July 2018 on Ailey's motion to stay, nothing had changed. There were no changed circumstances. So I don't know why appeals are pending in this court from the invalidity to termination by the board. Well, correct. But what this court... But the judge, I mean, Wright and Miller tells everybody, well, in these circumstances, ask the judge to stay because the judge doesn't want to get aggressive and do a Simmons ruling when it was in front of him, when the federal circuit might flip the board on the invalidity. So you just close the book and wait and see what happens, and then you follow the Supreme Court law. But there's no bright line rule for the district court to follow. There are bright line rules on the mandate in retractable technologies, Tronzo. This court has said that the district court is unable to go back and look at retrospective relief. The Amato v. Microsoft is probably most on point where this court made a... But the problem is that if there had never been a Simmons case, it's conceivable that there could be a doctrine that says those aspects of a case that are unaffectable by the remaining, the still live aspects, the first aspects were over and done with. They are never subject to later reconsideration. But Simmons is just flatly to the contrary. But the unfair competition claim kept the Pennsylvania case alive to undo the previously final patent validity ruling. There was a case or controversy between the parties that remained live, and that's not true here. The 012 patent is no longer a live issue. No, they were ongoing royalties. Well, there are no longer ongoing royalties because these patents have expired as of April. So whatever damages this court has affirmed from the jury's verdict and post-verdict royalties are set. They are fixed in a final judgment that this court has already affirmed. That should not be disturbed by a later decision of the PTO, even if this court does affirm it. We have a problem with balancing Article III jurisdiction and finality versus later decisions by the PTO, which this court has looked at as recently as in Vernetics and found that this court's rulings should stand. Thank you, Your Honors. Let me address that last point first. The Supreme Court in oil states clarified what happens in IPR proceedings. That is a constitutional exercise of the congressionally delegated authority of the Patent Office to reconsider its grant of patents. When it did so in this case, it determined that Krimer has no legitimate scope to the asserted claims that it has used against ALE. That demanded reconsideration by the district court. The district court should have either stayed the case or entered an ongoing royalty rate of zero, which is what ALE requested in the briefing of the motion to stay at Appendix 336. ALE requested to stay or set the ongoing royalty rate to zero. There was also the request in the footnote with respect to Rule 60, which was re-urged after the district court entered the final judgment. Any arguments that Mr. Cohen made with respect to the finality in the mandate rule were correctly responded to by this court. Simmons demands this is still a live case and controversy on whether it is equitable to award ongoing royalties on patents that have been held invalid by the Patent Office. It is not equitable to require ALE to be the... So it certainly was before April 18th, 2019, right? That's when the three non-012 patents expired. Yes, Your Honor. Why is it now? So the award of ongoing royalties that the district court entered in the amended final judgment was as part of its equitable discretion. It is the same thing that happened in Fresnias. The patents had expired when the district court entered the post-verdict ongoing royalties and when this court applied collateral estoppel to render the Fresnias move. It is only by its equitable discretion that the district court can award ongoing royalties. And when it revisited those ongoing royalties in the amended final judgment, it had to revisit the ongoing royalties to remove the scope of the 012 patent. Because if this court will remember, the 012 patent is the only one of the four assertive patents that had an extra year of life on it. And so the district court revisited the ongoing royalties to remove the term attributable to the 012 patent, but declined to even consider that there had been a change in equities between the parties as a result of the final written decisions. Assume, just as a hypothesis, the district court had granted your request for an ongoing royalty rate of zero and in order to that effect. Would you still be arguing here on Simmons that you're entitled to get rid of the damages award as well? Well, I have two responses to that, Your Honor. First, it is a hypothetical, and it's unclear whether ALE would have pursued an appeal at that point because the ongoing royalties are certainly... What you're asking us is to decide that the district court erred in not having given you a zero royalty rate. So, assume we agree with you and there was an abuse of discretion or error of law or something, should have done that. So, no, don't enter that order. What's that do to your Simmons argument? Well, so with respect to separating the ongoing royalties from the judgment at this point in time, ALE requested in its motion to stay as part of that request to sever and stay the ongoing royalty part of the case. Crimer opposed that severance. They waived the argument to separate the judgment from the award of ongoing royalties and the application of collateral estoppel to the judgment and the ongoing royalties in this case. The reason why I ask the question, it seems to me as a practical matter, it's the $325,000 plus in damages that's at stake here. I can't believe there's going to be an ongoing royalty paid with the patents expired and invalidated. Does the record tell us anything about roughly how much the ongoing royalties were? The $325,000 was the retrospective, right? Right, and the ongoing royalties would have been the jury rate of $1.2067 per POE port for the number of ports through the patent expiration. So, it's orders of magnitude above what the jury's verdict was. Thank you. Thank you. Case is submitted.